UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DR. MICHAEL G. WEBSTER, | * | CIVIL ACTION NO. 13-6613 |
| | * | |
| Plaintiff, | * | SECTION "__" (__) |
| | * | |
| VERSUS | * | JUDGE _____ |
| | * | |
| BOARD OF SUPERVISORS OF THE | * | MAGISTRATE JUDGE _____ |
| UNIVERSITY OF LOUISIANA SYSTEM | * | |
| (SOUTHEASTERN LOUISIANA UNIVERSITY), | * | |
| DR. LYNETTE RALPH, ERIC JOHNSON, and | * | |
| VICTOR E. "GENE" PREGEANT | * | |
| | * | |
| Defendants. | * | Jury Requested. |
| | * | |

*********************************************

**COMPLAINT FOR DAMAGES**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Dr. Michael G. Webster, who files this complaint to obtain full and complete relief and to redress the unlawful employment practices suffered by him as described herein:

**1.**

This action for employment discrimination seeks declaratory, injunctive and equitable relief, back pay, reinstatement (or in lieu thereof, front pay), compensatory damages, punitive damages, attorney's fees, prejudgment interest, and costs for discrimination, harassment, retaliation, and hostile work environment based on disability, in Southeastern Louisiana University's, Dr. Ralph's, Mr. Johnson's, and Mr. Pregeant's treatment of Dr. Webster.

**JURISDICTION AND VENUE**

**2.**

This action is brought pursuant to The Americans with Disabilities Act of 1990, as amended, and the ADA Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.* This Court has

jurisdiction pursuant to 28 U.S.C. § 1331 because the actions arise under the laws of the United States. Declaratory, injunctive and equitable relief is sought pursuant toBoard 4 42 U.S.C. 2000e-5(g) (through 42 U.S.C. § 12117(a)).

**3.**

This action properly lies in the Eastern District of Louisiana because all acts and actions appear to have occurred in the State of Louisiana, Parish of Tangipahoa, City of Hammond, which encompass the jurisdiction and venue of the Eastern District of Louisiana.

**PARTIES**

**4.**

Plaintiff, Dr. Michael G. Webster is of the age of majority and a resident of the State of Louisiana who was formerly employed by the Board of Supervisors of the University of Louisiana System through its operations at Southeastern Louisiana University. Dr. Webster was an "employee" of the Board of Supervisors of the University of Louisiana System and Southeastern Louisiana University within the meaning of 42 U.S.C. § 12111(4).

**5.**

Defendants in this matter are:

a. Board of Supervisors of the University of Louisiana System, which is a public corporation, appointed by the Governor of the State of Louisiana and charged with governing the constituent campuses of the University of Louisiana System, of which Southeastern Louisiana University is part. The Board of Supervisors is mandated to exercise all power to direct, control, supervise and manage Southeastern Louisiana University of Hammond. The Board of Supervisors of the University of Louisiana System and Southeastern Louisiana University was the "employer" of Dr. Webster within the meaning of 42 U.S.C. § 12111(5).

b. Eric Johnson was at all times relevant to the facts and actions arising from this lawsuit the Sims Library Director at Southeastern Louisiana University and supervisor of Plaintiff, Dr. Michael Webster.  Johnson is hereby made Defendant in this action in both his personal and official capacities.

c. Dr. Lynette Ralph was at all times relevant to the facts and actions arising from this lawsuit the Assistant Sims Library Director at Southeastern Louisiana University and supervisor of Plaintiff, Dr. Michael Webster.  Ralph is hereby made Defendant in this action in both her personal and official capacities.

d. Victor E. "Gene" Pregeant was at all times relevant to the facts and actions arising from this lawsuit the Compliance Officer for EEO/ADA at Southeastern Louisiana University.  Pregeant is hereby made Defendant in this action in both his personal and official capacities.

## FACTS

### EMPLOYMENT WITH SOUTHEASTERN LOUISIANA UNIVERSITY

**6.**

Dr. Webster started his employment at Southeastern Louisiana University on or about November 5, 2007, employed as Collection Development Librarian, a tenure track faculty position within the guidelines and policies of Southeastern Louisiana University.

**7.**

On or about July 6, 2009, Johnson recommended that Dr. Webster's 2009-2010 contract not be renewed and that his employment be effectively terminated on or about January 10, 2010.

**8.**

On or about July 9, 2009, Dr. Lynette Ralph, demoted Dr. Webster from the position of Collection Development Librarian to Special Projects Librarian, a non-existing position within Southeastern Louisiana University and only created specifically to demote Dr. Webster.

**9.**

About January 2010, the Equal Employment Opportunity Commission negotiated with Southeastern Louisiana University to withhold any adverse employment actions against Dr. Webster, including terminating his employment on January 10, 2010, based on the Commission's belief that Dr. Webster's rights under the Americans with Disability Act appeared to have been violated.  Southeastern Louisiana University agreed to withhold any adverse employment actions against Dr. Webster until the Commission was completed with its investigation and issued its findings.

**10.**

On or about June 30, 2010, Johnson terminated Dr. Webster's employment with Southeastern Louisiana University without regard to the University's agreement in January 2010. This termination was done without regard to and not in compliance with the requirements and standards set forth in the University's policies regarding termination of faculty.

**11.**

Dr. Webster's termination was effective July 14, 2010, however, on July 12, 2010, Dr. Webster was informed by Johnson and Ralph that he was no longer required to report to work and had him escorted off campus property by the University's police department.

**S**PECIFIC **A**CTIONS AND **F**ACTS

**12.**

On or about January 24-28, 2008, Dr. Webster informed his immediate supervisor, Assistant Library Director Dr. Lynette Ralph, that he suffered from manic and major depression and other mental health issues.

**13.**

In this conversation, Dr. Webster discussed with Ralph that he received and regularly took medication to correct this medical condition, however, at times, extreme stress may cause a chemical imbalance that his medication may not be able to regulate. In these situations, his behavior would be extremely unusual and likely recognizable as out of character for him—typically such an occurrence would come in the form of irrational and illogical behavior and statements. Dr. Webster requested that if these behaviors were exhibited that Ralph alert him to such and not take the irrational or illogical statements as actual and real statements made by Dr. Webster.

**14.**

Ralph agreed with Dr. Webster that she understood his condition and would not hold such actions against him if they occurred. Ralph also agreed to inform and discuss Dr. Webster's medical condition and request with Library Director Eric Johnson.

**15.**

In essence, Dr. Webster requested a reasonable accommodation in this meeting that was accepted by his supervisors Ralph and Johnson. An accommodation that if he became irrational or illogical that Ralph and Johnson would review such actions in light of his disability, clinical depression, and discuss such events between the three of them when Dr. Webster was out of the

episodic event and not hold such against Dr. Webster but rather understand that his disability caused such.

16.

In March 2008, Dr. Webster informed Ralph that Interim Head of Reference Beth Stahr was causing him great stresses with her behavior towards him.  He informed Ralph that he was worried that her continued behavior was causing such great stress on him that he could become episodic with his manic depression.  Ralph did not acknowledge this issue or resolve the matter.

17.

Dr. Webster consulted with his physician and increased his medication dosage.

18.

At the end of May 2008, Stahr continued to be confrontational with Dr. Webster, unfoundedly accusing him of improper actions.  Certain allegations were of such a prejudicial and corrupting nature Library Director Johnson emailed all of the librarians on staff clarifying the inaccuracy of these accusations.

19.

Stahr's behavior towards Dr. Webster continued for the next year, causing disagreements between the two and substantial stresses on Dr. Webster—worsening his disability.

20.

On or about June 17/18 2009, Johnson called an emergency meeting to discuss purchases needed prior to the end of the fiscal year on July 1.  Stahr and Dr. Webster had dynamically opposite views on many of the purchasing issues.

**21.**

On Friday, June 19, 2009, a non-work day for Dr. Webster, he had a manic depression episode in which he emailed Ralph regarding his opinion on the events of June 17-18, 2008, with Stahr. Despite certain points in the email appearing to be rationale points, by the last few paragraphs of the email, Dr. Webster's statements were unusual to say the least—accusing Johnson of sexual harassment.

**22.**

On Saturday, June 20, 2009, Dr. Webster realized an episode had occurred. He also realized that he had sent an email to Ralph that was precipitated by his illness and that contained allegations against Library Director Johnson that were completely false and irrational.

**23.**

Dr. Webster immediately emailed Ralph requesting she ignore and delete his emails sent on June 19, 2009, and that these emails were caused by a manic depressive episode. Essentially, engaging his previously requested and accepted reasonable accommodation.

**24.**

Dr. Webster emailed Ralph throughout the weekend and the following week explaining that his statements in the June 19th emails were baseless and caused by his depression. Ralph did not respond or acknowledge Dr. Webster until June 30, 2008, at which time they met to discuss the matter. During this meeting, Dr. Webster was in tearing trying to explain that his depression episode caused this email, that he would never have sent that in sound mind, and that his statements were baseless. Ralph, instead of discussing this email and situation, told Dr. Webster she was not going to sit in her office and watch him cry and left the meeting.

**25.**

This June 19, 2009, email was the exact type of behavior that Dr. Webster discussed with Ralph in January 2008 and asked Ralph to accommodate and understand should it occur (for which she agreed to do).

**26.**

On or about July 1, 2009, University Compliance Officer for EEO/ADA matters Gene Pregeant contacted Dr. Webster regarding his June 19, 2009, allegations he made against Johnson in his email to Ralph.  Dr. Webster immediately responded to Pregeant's email informing him that the allegations were completely false and brought on by an episode of manic depression.

**27.**

On or about July 6, 2009, Ralph and Johnson informed Dr. Webster that his contract would not be renewed and his employment would end on January 6, 2010 (the earliest point in which Dr. Webster could be terminated under the University's policies governing termination of faculty members); that he was demoted from Collection Development Librarian to Special Projects Librarian; and, that his office was reassigned.

**28.**

Dr. Webster had informed his supervisor (Assistant Library Director) and Library Director of his disability in 2008 and explained details of his condition including the potential of irrational behavior if he is exposed to extreme stress.  In June 2009, this is exactly what occurred. Rather than disregarding this email and understanding this was an episodic moment of Dr. Webster's manic depression, Ralph and Johnson terminated Dr. Webster and demoted Dr. Webster until his termination date in direct result of Dr. Webster's known disability.

**29.**

On or about July 13, 2009, Dr. Webster filed a three-page complaint to Pregeant alleging harassment based on his disability and requesting an accommodation.

**30.**

In response to this complaint, Pregeant informed Dr. Webster that informing his supervisors (Library Director and Assistant Library Director) was not good enough to acknowledge his disability to institute a request for a reasonable accommodation. Direct acknowledgement from Pregeant's office is the only acceptable form of formal acknowledgement.  This was the first time Dr. Webster was ever made aware of this—Johnson and/or Ralph never informed him of this or forwarded Dr. Webster's statements, complaints or requests from January 2008 until July 2009 to Pregeant's office.

**31.**

Throughout the month of July 2009, Pregeant failed to accept or investigate Dr. Webster's complaint of harassment based on his disability or his request for a reasonable accommodation.

**32.**

Pregeant refused to investigate or accept Dr. Webster's complaint of harassment and discrimination unless Dr. Webster provided his medical records from specialty doctor.  Dr. Webster provided Pregeant with details of his disability from his treating/primary physician for which Pregeant said was not good enough to determine that Dr. Webster was disabled under the ADA and thus would not sustain Dr. Webster's complaint of harassment and discrimination.

**33.**

In August 2009, Dr. Webster filed his complaint with the Equal Employment Opportunity Commission in New Orleans.

**34.**

From July 2009 until his last day working at Southeastern Louisiana University, Dr. Webster was publicly ridiculed and embarrassed for his disability and the side effects of his medication.

**35.**

Throughout this period Johnson treated Dr. Webster differently; refused to accommodate Dr. Webster in any way based on his disability and the side effects of his medication; and, allowed other employees to humiliate and ridicule Dr. Webster because of his disability.

**36.**

During this time period, Johnson and Ralph again failed to recognize a request of a reasonable accommodation being made by Dr. Webster, and, failed to seek guidance from any University's human resources or compliance staff.  Rather, Johnson and Ralph harassed and discriminated against Dr. Webster based on the side effect of the medicine being used to control Dr. Webster's disability.

**37.**

From July 2009 until Dr. Webster's ultimate termination in July 2010, Dr. Webster was exposed to severe and continuous ridicule and harassment directly based on his medical disability and his filing of his EEOC complaint.

**38.**

Dr. Webster was informed by the EEOC that Southeastern Louisiana University agreed that they would not act with respect to terminating Dr. Webster (originally scheduled for January 6, 2009) until the EEOC completed its investigation and issued a determination favorable to the University on Dr. Webster's Charge of Discrimination.

**39.**

Despite this agreement, Johnson terminated Dr. Webster on June 30, 2010, effective July 14, 2010. However, on July 12, 2010, Johnson told Dr. Webster he was not required to work the next two days and had Dr. Webster escorted off the campus by University police. Johnson's actions against Dr. Webster were discriminatory and humiliating down to the very last minutes of Dr. Webster's employment.

**40.**

This two-week notice of termination was in violation of the University's policies regarding termination of faculty and was a breach of the University's agreement with Dr. Webster and the EEOC that he would not be terminated during the course of the Commission's investigation of Dr. Webster's Charge of Discrimination.

<u>CAUSES OF ACTION</u>

**41.**

Dr. Webster alleges that the Board, through its absence of any training or its substandard training under the Americans with Disabilities Act and the ADA Amendments Act unlawfully interfered with, harassed, discriminated, retaliated, refused to provide a reasonable accommodation, treated differently an individual with a disability or a perceived disability in

11

violation of the Americans with Disabilities Act and ADA Amendments Act, justifying an award of all available damages under the law, including those punitive in nature.

**42.**

Dr. Webster alleges that the Board, through its Compliance Officer, and Victor E. "Gene" Pregeant, in his official and private capacities, failed to implement a proper investigation procedure, refused to investigate Dr. Webster's complaint of discrimination and harassment, refused to take proper remedial actions to blatant discrimination and harassment occurring, refused to, denied or neglected to provide a reasonable accommodation, and unlawfully and improperly required Dr. Webster to produce medical records in violation of the Americans with Disabilities Act and ADA Amendments Act, justifying an award of all available damages under the law, including those punitive in nature.

**43.**

Dr. Webster alleges that the Board, through its lack of investigation, its oversight of proper implementation of the Americans with Disabilities Act, its demotion of Dr. Webster in direct response to his disability, its termination of Dr. Webster in direct response to his disability, and its harassment and discrimination of Dr. Webster through its employees in violation of the Americans with Disabilities Act and ADA Amendments Act, justifying an award of all available damages under the law, including those punitive in nature.

**44.**

Dr. Webster alleges Eric Johnson and Dr. Lynette Ralph, in their official and private capacities, intentionally and willfully harassed and discriminated against Dr. Webster in violation of the Americans with Disabilities Act and ADA Amendments Act, including causing his demotion and termination, justifying an award of all available damages under the law.

**45.**

By the above acts the Board of Supervisors of the University of Louisiana System, through its management of Southeastern Louisiana University has violated the Americans with Disabilities Act, as amended and the ADA Amendments Act, by demoting Dr. Webster, terminating Dr. Webster, failing to provide Dr. Webster with a reasonable accommodation, and subjecting Dr. Webster to harassment, discrimination and retaliation based on his disability.

**46.**

As a direct and proximate consequence of Defendants unlawful employment policies and practices, Dr. Webster has suffered loss of income, including, but not limited to, past and future wages, benefits, expenses, liquidated damages, compensatory damages, punitive damages, pain and suffering, emotional distress, loss of professional reputation, loss of consortium, humiliation, embarrassment, and mental anguish, all to be specified at the trial of this matter.

EXHAUSTION OF ADMINISTRATIVE PROCEDURES

**47.**

Dr. Webster timely filed a Charge of Discrimination, Charge Number 461-2009-01900, with the United States Equal Employment Opportunity Commission, and duly participated in the E.E.O.C.'s investigation process.

**48.**

The E.E.O.C. concluded, after a complete investigation of Dr. Webster's Charge of Discrimination, that Southeastern Louisiana University removed Dr. Webster from his Collection Development Librarian position, reassigned him an inferior position, changed his office, and terminated him because of his disability and record of disability violated the Americans with Disabilities Act.  *See* E.E.O.C. Determination attached as Exhibit 1 to this Complaint.

**49.**

The E.E.O.C., through the U.S. Department of Justice, Civil Rights Division, Disability Rights Section, issued Dr. Webster his Notice of Right to Sue based on conciliation failure, providing, under Title I of the Americans with Disabilities Act of 1990, the right to file this lawsuit within 90 days of the receipt of the Notice.  *See* E.E.O.C. Notice of Right to Sue attached as Exhibit 2 to this Complaint.

**50.**

Dr. Webster now timely brings this Complaint in accordance with his rights and within the time limits provided under the Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008.

### JURY DEMAND

**51.**

Dr. Webster requests and demands a trial by jury as authorized under the Federal Rules of Civil Procedure, Rule 38(b).

### PRAYER

**52.**

WHEREFORE, Plaintiff, Dr. Michael G. Webster prays that this Court:

a. Declare that the acts and practices complained of herein of the Board of Supervisors of the University of Louisiana Systems, through its operation of Southeastern Louisiana University and of Eric Johnson, Dr. Lynette Ralph and Victor E. "Gene" Pregeant are in violation of United States law;

b. Enjoin and permanently restrain the Board of Supervisors of the University of Louisiana Systems, Southeastern Louisiana University, Eric Johnson, Dr.

        Lynette Ralph and Victor E. "Gene" Pregeant from engaging in such unlawful practices;

c.    Award Dr. Webster all earnings and benefits he did not receive because of the actions of the Board of Supervisors of the University of Louisiana Systems, Southeastern Louisiana University, Eric Johnson, Dr. Lynette Ralph and Victor E. "Gene" Pregeant including but not limited to back pay, pre-judgment interest, and any other lost benefits;

d.    Reinstate Dr. Webster to the position he would have occupied but for the unlawful treatment he was subjected, or in lieu thereof, award Dr. Webster front pay;

e.    Award Dr. Webster compensatory damages for pain and suffering, emotional distress, mental anguish, loss of reputation, embarrassment, loss of consortium, and humiliation;

f.    Award Dr. Webster punitive damages;

g.    Award Dr. Webster costs and attorney's fees;

h.    Grant Dr. Webster any such relief as this Court may deem just and proper.

        Respectfully submitted,

*/s/ Bryce G. Murray*

Bryce G. Murray, T.A., La. Bar No. 28968
**BRYCE G. MURRAY, ATTORNEY-NOTARY, LLC**
4708 Trenton Street
Metairie, Louisiana 70006
(504) 383-3246
bryce@brycemurray.com

**ATTORNEY FOR PLAINTIFF
DR. MICHAEL G. WEBSTER**

15

**SERVICE TO BE MADE UPON:**

**Board of Supervisors of the University of Louisiana System (Southeastern Louisiana University); Eric Jogiphnson; Lynette Ralph; and, Victor E. "Gene" Pregeant** through the designated addresses in the citations simultaneously submitted with this Complaint to be executed by the Clerk of Court.