UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DR. MICHAEL G. WEBSTER                  CIVIL ACTION

VERSUS                                  NO: 13-6613

BOARD OF SUPERVISORS OF THE UNIVERSITY     SECTION: R(3)
OF LOUISIANA SYSTEM, et al.

## ORDER AND REASONS

Defendants, the Board of Supervisors of the University of Louisiana System (Southeastern University), Eric Johnson, Dr. Lynette Ralph, and Victor Pregeant, move for summary judgment on plaintiff Dr. Michael Webster's claims for prospective relief under the Americans with Disabilities Act.[1]  For the following reasons, the Court grants the motion.

## I. BACKGROUND

Plaintiff filed this action alleging violations of the Americans with Disabilities Act of 1990 ("ADA") and the ADA Amendments Act of 2008.  Plaintiff sued the Board of Supervisors of the University of Louisiana System; Eric Johnson, in his personal capacity and official capacity as Sims Library Director at Southeastern University ("SLU"); Lynette Ralph, in her personal capacity and official capacity as Assistant Sims Library Director at SLU; and Victor Pregeant, in his personal capacity and official

---

[1]    R. Doc. 45.

capacity as Compliance Officer for Equal Employment Opportunity / Americans with Disabilities Act at SLU.

Plaintiff alleged the following facts.  In 2007, SLU hired him as a Collection Development Librarian.  In early 2008, he informed Ralph, his immediate supervisor, that he suffered from manic and major depression and that, despite taking medication, he might occasionally behave irrationally.  On June 19, 2009, while suffering a manic episode, plaintiff sent Ralph an e-mail falsely accusing Johnson of sexual harassment.  The next day, realizing what he had done, plaintiff sent Ralph an e-mail explaining that the accusation was caused by a manic episode and asking her to delete and disregard it.

On or about July 6, 2009, Ralph and Johnson informed plaintiff that SLU would not renew his contract and that his employment would cease on January 6, 2010.  In the meantime, he would be demoted from Collection Development Librarian to Special Projects Librarian.  A week later, plaintiff filed a complaint with Pregeant alleging harassment based on his disability and requesting an accommodation.  He alleges that Pregeant refused to investigate his complaint because plaintiff was unable to provide records of his disability from a medical specialist.

In August 2009, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  The EEOC later informed him that SLU had agreed not to effectuate his termination until the EEOC completed its investigation.  Nevertheless, before

the EEOC investigation concluded, SLU terminated plaintiff's employment on June 30, 2010, with an effective date of termination of July 14, 2010. According to plaintiff, he was escorted off campus and told he was no longer required to report to work on July 12, 2010, two days before his official termination date. Plaintiff alleges that from July 2009 through his date of termination, he sustained public ridicule and embarrassment for his disability and the side effects of his medication.

On September 28, 2011, the EEOC issued its determination finding reasonable cause to believe that SLU terminated Webster because of his disability. The EEOC engaged the parties in conciliation efforts, which proved unsuccessful. On September 9, 2013, the Department of Justice issued plaintiff a right to sue letter. Plaintiff brought this action on December 9, 2013.

Following a motion to dismiss, the Court dismissed plaintiff's claims for money damages against SLU and against Johnson, Ralph, and Pregeant in their official capacities, and plaintiff's claims against Johnson, Ralph, and Pregeant in their personal capacities. The Court permitted plaintiff to proceed with his claims for prospective declaratory and injunctive relief against Johnson, Ralph, and Pregeant in their official capacities.[2]

On March 16, 2015, plaintiff filed a motion for leave to amend his complaint to add a claim under section 504 of the

---

[2]     R. Doc. 26.

Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and to add or clarify a claim under Louisiana state obligations law. The Magistrate Judge granted plaintiff's motion to add a section 504 claim under the Rehabilitation Act as to the Board of Supervisors, but denied the motion in all other respects. On review of the Magistrate Judge's order, this Court reversed the Magistrate Judge's decision in part and denied plaintiff's motion for leave to amend his complaint to add a claim under section 504 of the Rehabilitation Act.[3]

The gravamen of plaintiff's claim is reinstatement, but plaintiff also seeks front pay in lieu of reinstatement. Defendants move for summary judgment, contending that, because reinstatement is not feasible, and front pay is barred by the Eleventh Amendment, plaintiff's claim should be dismissed.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains

---

[3]    R. Doc. 90.

from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-399 (5th Cir. 2008).   The Court must draw reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2738 (2d ed. 1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quotation marks removed).   The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the

nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.; see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 322).


## III. DISCUSSION

### A. Summary Judgment Record

Plaintiff worked at Sims Library at SLU from November 2007 through July 14, 2010.  Initially, he worked as the Collection Development Librarian.  As reflected in the job posting for this position, plaintiff's responsibilities included evaluating and developing the library's collection; supervising the acquisitions unit; overseeing the departmental liaison program; recommending fund allocation for the purchase of library materials; selecting and evaluating appropriate vendors; approving plans, de-selection, and gifts; establishing and maintaining effective communication

with academic departments; and serving on library and university committees.[4]   An undated job description of the position of Collection Development Librarian, submitted by plaintiff, specifies that plaintiff was responsible for (1) overall management of the acquisitions department, (2) evaluating the collection and identifying weaknesses and strengths,[5] (3) coordinating selection of all non-serial monographic materials in print and other formats for placing firm orders by librarians or departmental faculty,[6] (4)

_____

[4]   R.  Doc. 52, Ex. 5.

[5]   This includes (1) providing an annual plan outlining areas of concentration for collection building to the Collection Development Committee based on departmental requests and/or perceived weaknesses in the collection; (2) providing ongoing reports, as needed, and an annual overview of the year's collection development activities to the Collection Development Committee; (3) preparing reports for accreditation reviews and program proposals for academic departments; (4) conducting studies on the use of the monograph collection; (5) analyzing statistics; (6) updating the collection development policy as needed; (7) working with serials, reference, government documents, media, and health sciences librarians in the development of their respective collections; and (8) providing reports and data, in collaboration with the library liaisons and library administration, on the library's holdings for accreditation and other reports.  R. Doc. 52, Ex. 2 at 1-2.

[6]   This includes (1) coordinating the collection development activities of library liaisons; (2) acting as liaison with departmental faculty in collaboration with the appointed library liaisons; (3) staying aware of existing curriculum and programs and proposed changes to curriculum and programs of the university; (4) initiating special ordering projects to strengthen the collection through the use of recognized lists, bibliographies, etc. and in fulfillment of the annual plan; (5) recommending or advising on the choice of vendors when appropriate; (6) coordinating selection procedures within the library; and (7) identifying, selecting, and monitoring approval plans.  *Id.* at 2.

providing recommendations concerning monographic acquisitions,[7] (5) planning for de-selection of materials,[8] (6) evaluating monographic gifts received by the library,[9] (7) monitoring and evaluating the physical condition of library materials, including selecting monographic and non-print materials for in-house mending, binding, rebinding, or replacement, and (8) the general responsibilities of participating in ongoing professional development, serving on library and university committees, chairing the collection development committee, serving as the library representative on the university curriculum council, preparing monthly and annual reports for the assistant director of user services, and performing other duties as assigned.[10]

In July 2009, shortly after an incident in which plaintiff, during an alleged manic episode, falsely accused the library director of sexual harassment, the library transitioned him to

---

[7]     This includes (1) monitoring spending by departments; (2) becoming familiar with Sirsi fund accounting; (3) preparing reports reflecting spending by departments; (4) analyzing trends and projecting future needs; and (5) monitoring expenditures and adjusting selection as needed to stay within budget. *Id.* at 2-3.

[8]     This includes (1) reviewing items withdrawn from the collection for replacement, (2) in consultation with the appropriate library liaisons departmental faculty, and the collection development committee, as needed, planning a systematic weeding of the collection as part of an annual or extended plan; and (3) consulting with appropriate departments in planning for de-selecting. *Id.* at 3.

[9]     This includes studying the feasibility of exchange lists for monographs. *Id.*

[10]     R. Doc. 52, Ex. 2.

Special Projects Librarian.[11]  At the time, other staff members of
the library absorbed plaintiff's duties as Collection Development
Librarian and SLU did not hire a replacement.[12]  While plaintiff's
position changed, his pay remained the same, and he continued to be
paid out of funding allocated for a Collection Development
Librarian.[13]  In June 2010,  SLU chose not to renew funding for the
Collection Development Librarian position.  It has not renewed the
funding for the position since that time.[14]  According to Eric
Johnson, director of Sims Library, SLU eliminated the funding in an
effort to consolidate positions at the library and to reduce the
number of employees.[15]  Plaintiff remained in the position of
Special Project Librarian until SLU terminated him on July 14,
2010.

When plaintiff served as Collection Development Librarian,
three library specialists worked under him.[16]  One retired on July
29, 2010, and, in September 2011, the other two announced that they
would retire.[17]  In September 2011, over one year after plaintiff's

---

[11]    R. Doc. 45, Ex. 1 at ¶ 5.

[12]    *Id.* at ¶ 4.

[13]    *Id.* at ¶ 8-9.

[14]    *Id.* at ¶ 3, 6.

[15]    *Id.* at ¶ 6.

[16]    R. Doc. 59, Ex. A at ¶ 2.

[17]    *Id.* at ¶ 3-4.

termination, Johnson decided he needed to hire a Head of Acquisitions to oversee the day-to-day ordering of materials.[18] Johnson received permission from SLU to fill one of the vacated library specialist positions using funding previously set aside for the Assistant Access Service position.  In November 2011, he hired a library specialist to work in Acquisitions.[19] On January 6, 2012, the two remaining library specialists who had worked in Collections retired, requiring a reference/instruction librarian to temporarily work part-time in Acquisitions.[20]  On April 2, 2012, almost two years after plaintiff's termination, Paul Kelsey began working as Head of Acquisitions.[21]  The Acquisitions department now consists of the Head of Acquisitions and a single library specialist.[22]

Plaintiff contends that the responsibilities of his former position as Collection Development Librarian and those of the Head of Acquisitions are "essentially the same."[23]  Defendants dispute this assertion, contending that the Head of Acquisitions assumed only those duties from the Collection Development Librarian that involved the day-to-day ordering of materials and supervising one

---

[18]    *Id.* at ¶ 4-5.

[19]    *Id.* at ¶ 5-7.

[20]    *Id.* at ¶ 8-9.

[21]    *Id.* at ¶ 10.

[22]    *Id.* at ¶ 11-13.

[23]    R. Doc. 52, Ex. 8 at 182.

library specialist.[24]   Specifically, Johnson, in an affidavit, represents that the Head of Acquisitions' duties differ from those of the former Collection Development Librarian because (1) the duties of collection development, oversight of the library liaison program, and creating accreditation reports, which had been duties of the Collection Development Librarian, became the duties of the Library Director after elimination of the Collection Development Librarian position; (2) e-mails to the library liaisons relating to collection development previously came from the Collection development librarian, but now all come from the Library Director; and (3) the revision of the Collection Development Policy, which was undertaken by the Collection Development Librarian, was redistributed to become a joint effort of four department heads at the library.[25]   Johnson further states that he gives the Head of Acquisitions input on day-to-day management, something he did not do when plaintiff served as Collection Development Librarian.[26] Besides oversight of acquisitions, Johnson states that the only overlap the Head of Acquisitions position has with the former Collection Development position is that of staying aware of existing curriculum and programs and proposed changes by serving on

---

[24]   R. Doc. 59, Ex. A at ¶ 13-18.

[25]   *Id.* at ¶ 15-17.

[26]   *Id.* at ¶ 18.

11

the university curriculum committee.[27]   Finally, plaintiff supervised three other library specialists as Collection Development Librarian whereas the present Head of Acquisitions oversees only one other librarian.[28]

**B. Reinstatement**

Defendants contend that reinstatement is not feasible because plaintiff's former position no longer exists, and his former responsibilities have been allocated among existing Sims Library staff. *See Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 257 (5th Cir. 1996) (holding that reinstatement is not appropriate when the plaintiff's former position no longer exists) (citing *Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1255 (5th Cir. 1995)).

"Where feasible, reinstatement rather than front pay is the preferred remedy for a victim of employment discrimination." *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 382 (5th Cir. 1988).  Several factors courts consider in determining whether reinstatement is feasible are (1) "whether positions now exist comparable to the plaintiff's former position and whether reinstatement would require an employer to displace an existing employee," (2) "whether the plaintiff has changed careers," and (3) "whether animosity exists between the plaintiff and his former

---

[27]   *Id.* at ¶ 19.

[28]   *Id.* at ¶¶ 13-14.

employer."[29]  *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 489 (5th Cir. 2007) (citations omitted); *see also Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 863 (5th Cir. 2010) ("[T]he decision of whether or not to grant reinstatement is within the discretion of the district court and [the] court may properly consider factors such as the availability of positions, the plaintiff's current employment status, and the impact reinstatement would have on employee relations in making its decision.").

In *Palasota*, the Fifth Circuit held that reinstatement was not required when no position comparable to the plaintiff's former position existed, and rehiring plaintiff "would require either termination of another employee or a decrease in each current employee's sales territory and salary." 499 F.3d at 489.  There, the employer indicated that it had not hired any new employees for the type of position at issue in several years, did not intend to hire more, and that reductions were likely in the future.  *Id.*  The Fifth Circuit also reasoned that the lack of openings resulted from "changes in the market and corporate management structure over the last two decades," and not from "employer recalcitrance."  *Id.* at

---

[29]     "In cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers . . . , courts have ordered front pay as a substitute for reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001); *see also Brunnemann v. Terra Intern., Inc.*, 975 F.2d 175, 180 (5th Cir. 1992) ("There are some instances when reinstatement would not be feasible, for example, when there is discord and antagonism between the parties.") (citing *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990)).

490.   Further, the court found it significant that the employer
could no longer guarantee the plaintiff the same salary, that
plaintiff was not interested in returning at a lower salary, and
that plaintiff, who had been out of the industry for years, had
recently opened his own business.   *Id.*   Finally, the record
suggested "some lingering animosity between the parties."   *Id.*

Even if reinstatement would require displacement of an
existing employee, reinstatement is not necessarily inappropriate.
As the Fifth Circuit has recognized:

> If the existence of a replacement constituted a complete
> defense against reinstatement, then reinstatement could
> be effectively blocked in every case merely by hiring an
> innocent third party after the retaliatory purpose was
> achieved.   Thus, the deterrent effect of the remedy of
> reinstatement would be rendered a nullity.

*Reeves v. Claiborne Cnty. Bd. of Educ.*, 828 F.2d 1096, 1102-03 (5th
Cir. 1987).   "While reinstatement may displace an innocent
employee, the '[e]nforcement of constitutional rights [may have]
disturbing consequences.   Relief is not restricted to that which
would be pleasing and free of irritation."   *Id.* (citing *Sterzing v.
Fort Bend Ind. Sch. Dist.*, 496 F.2d 92, 93 (5th Cir. 1974); *Bueno
v. City of Donna*, 714 F.2d 484, 496 (5th Cir. 1983)).   In a case
several years later, the Fifth Circuit upheld the district court's
reinstatement of the plaintiff to a position then held by another
employee.   *Brunnemann v. Terra Intern. Inc.*, 975 F.2d 175, 180 (5th
Cir. 1992); *see also Fuhr v. Sch. Dist. of City of Hazel Park*, 364
F.3d 753, 761-62 (6th Cir. 2004) (upholding district court's order

of instatement even though it required bumping an existing employee); *Feldman v. Phila. Housing Auth.*, 43 F.3d 823, 838 (3d Cir. 1994) (holding that reinstatement is an available remedy even when a third person occupies plaintiff's former position). Still, the Fifth Circuit more recently stated that "except under extraordinary circumstances . . . , innocent incumbents may not be displaced." *Palasota*, 499 F.3d at 489 (citing *Gamble v. Birmingham S. R. Co.*, 514 F.2d 678, 686 (5th Cir. 1975) (stating district court has broad remedial powers to eliminate present effects of past systemic racial discrimination)).

The Court finds no genuine issue precluding a finding that plaintiff's former position no longer exists. Here, SLU eliminated funding for plaintiff's former position, Collection Development Librarian, in 2010,[30] and it has not re-established the position.[31] Moreover, the former Collection Development Librarian position is not the same or comparable to the present Head of Acquisitions position. Several observations compel the Court's conclusion. First, the Head of Acquisitions position was not filled until nearly two years after plaintiff's termination; until this point, other library staff performed all of plaintiff's former duties. This fact weighs against a finding that defendants simply renamed plaintiff's position. Second, the present Head of Acquisitions

---

[30]    R. Doc. 45, Ex. 1 at ¶ 3.

[31]    *Id.* at ¶ 6.

performs a fraction of the duties that had been assigned to plaintiff. The Head of Acquisitions has two roles: (1) oversight of day-to-day ordering of materials, and (2) staying abreast of curriculum and program changes by serving on the university curriculum counsel.[32]   In contrast, plaintiff's own evidence demonstrates that he was responsible for (1) overall management of the acquisitions department, (2) evaluating the collection and identifying weaknesses and strengths, (3) coordinating selection of all non-serial monographic materials in print and other formats for placing firm orders by librarians or departmental faculty, (4) providing recommendations concerning monographic acquisitions, (5) planning for de-selection of materials, (6) evaluating monographic gifts received by the library, (7) monitoring and evaluating the physical condition of library materials, including selecting monographic and non-print materials for in-house mending, binding, rebinding, or replacement, and (8) the general responsibilities of participating in ongoing professional development, serving on library and university committees, chairing the collection development committee, serving as the library representative on the university curriculum council, preparing monthly and annual reports for the assistant director of user services, and performing other duties as assigned.[33]   There can be no dispute that plaintiff's

---

[32]   R. Doc. 59, Ex. A at ¶¶ 5, 18-19.

[33]   R. Doc. 52, Ex. 2.

16

former responsibilities extended much further than those of the present Head of Acquisitions to include high-level management and development of the library collection and leadership of the collection development committee. Plaintiff's unsupported testimony that "[t]he functions [of the positions] are essentially the same"[34] cannot defeat summary judgment on this point. *See Brummett v. Innovex Am. Holding Co.*, 113 F. App'x 597, 599 (5th Cir. 2004) (recognizing that "self-serving conclusory assertions" cannot defeat summary judgment).

In addition, that the library director now oversees collection development and the library liaison program, as well as creation of accreditation reports, which were significant components of plaintiff's former job, militates in favor of the Court's finding that the positions are not comparable.[35] Finally, exemplifying the circumscribed role of the Head of Acquisitions compared to the Collection Development Librarian, plaintiff had three library specialists working under him whereas the present Head of

---

[34]    R. Doc. 52, Ex. 8 at 181-82.  Plaintiff also attaches descriptions of Collection Development Librarian and Head of Acquisitions positions from other libraries in an effort to show that the positions are often one in the same.  These documents, however, have no bearing on whether plaintiff's former position and the present Head of Acquisitions position are the same.  They show merely that a single individual performs both functions in some libraries.

[35]    R. Doc. 59, Ex. A at ¶ 15.

Acquisitions oversees only one other librarian.[36]   Thus, the Court finds that the positions are neither the same nor comparable.

In concluding that reinstatement is not viable, the Court also notes that the position of Head of Acquisitions is currently occupied, filled over two years after plaintiff's termination, and that the library now operates with far less staff.   Under these circumstances, reinstatement is not appropriate. *See Palasota*, 499 F.3d at 489 (finding reinstatement inappropriate where it would require either termination of another employee or a decrease in each current employee's sales territory and salary).

Accordingly, the Court finds that reinstatement is not available because no comparable position exists to which plaintiff could be reinstated.   *See Woodhouse*, 92 F.3d at 257 (holding that reinstatement is not appropriate when plaintiff's former position no longer exists).

### C. Front Pay

When reinstatement is not feasible, front pay is the appropriate remedy. *Julian v. City of Hous., Tex.*, 314 F.3d 721, 728 (5th Cir. 2002).   Front pay "compensates the plaintiff for lost income from the date of judgment to the date the plaintiff obtains the position she would have occupied but for the discrimination." *Floca v. Homcare Health Svs., Inc.*, 845 F.2d 108, 112 (5th Cir. 1988); *see also Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44

---

[36]     *Id.* at ¶¶ 13-14.

(5th Cir. 1992) ("Front pay is awarded to compensate the plaintiff for lost future wages and benefits.").

Defendants contend that front pay is barred by the Eleventh Amendment because it amounts to an award of money from the state treasury.  Sovereign immunity prevents citizens from bringing suit in federal court against states of the United States that have not consented to the suit.  U.S. Const. amend. XI; *Pennhurst State Sch. & Hosp.*, 465 U.S. 89, 97–103 (1984); *Hans v. Louisiana*, 134 U.S. 1, 21 (1890).  This rule applies to state agencies such as the Board of Supervisors of the University of Louisiana System.  *See Rushing v. Bd. of Supervisors of Univ. of La. Sys.*, No. 06-623-C, 2008 WL 4200292, at *3 (M.D. La. Sept. 11, 2008) ("The Board of Supervisors for the University of Louisiana System, as the governing body for Southeastern Louisiana University, is an agency of the State of Louisiana and has Eleventh Amendment immunity from suit against it in federal court.").  In addition, lawsuits against state officials in their official capacities are typically suits against the state itself and cannot be brought absent a sovereign-immunity exception. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

The doctrine of *Ex parte Young* serves as an exception to the rule that official capacity suits represent suits against the state.  *Ex parte Young*, 209 U.S. 123 (1908).  This exception holds that a suit is not barred by sovereign immunity when it is brought against state officials to enjoin an ongoing violation of federal

law.  *See id.* at 155-56; *Meza v. Livingston*, 607 F.3d 392, 411-12 (5th Cir. 2010); *Am. Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920 (5th Cir. 1993).  The exception may be maintained "because the state *cannot* confer authority on its officers to violate the Constitution or federal law." *Dent*, 982 F.2d at 920-21 (emphasis in original); *Ex parte Young*, 209 U.S. at 159. Accordingly, "[o]nly for the purposes of the Eleventh Amendment are official capacity actions for prospective relief not treated as actions against the state." *McCarthy v. Hawkins*, 381 F.3d 407, 414 (5th Cir. 2004) (quoting *Graham*, 473 U.S. at 167 n.14) (ellipsis and internal quotation marks omitted).  The exception applies only to suits that seek prospective relief that is rooted in federal authority; it does not apply to actions that seek monetary relief for past harms or that pursue injunctive relief on the basis of state law.  *See Edelman v. Jordan*, 415 U.S. 651, 668-69 (1974); *Pennhurst*, 465 U.S. at 106.

To determine whether the exception applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)) (internal quotation marks and brackets omitted).  Typically, *Ex*

*parte Young* is adequately invoked when a plaintiff alleges an ongoing violation of federal law. *See Coeur d'Alene Tribe*, 521 U.S. at 281 ("An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction."); *see also McCarthy*, 381 F.3d at 415–16.

Here, plaintiff seeks front pay in lieu of reinstatement. Front pay is a form of prospective relief, *see Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990), but "[i]f the prospective relief sought is the functional equivalent of money damages, *i.e.*, '[i]t is measured in terms of a monetary loss resulting from a past breach of a legal duty,' *Ex parte Young* does not apply," *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) (quoting *Edelman*, 415 U.S. at 669). Many courts have recognized that front pay is barred by the Eleventh Amendment in cases such as here, where the award would be paid with funds from the state treasury. For example, the Eighth Circuit in *Campbell v. Ark. Dep't of Corr.*, 155 F.3d 950, 962 (8th Cir. 1998), held that "front pay is not analogous to the prospective relief permitted under *Ex parte Young* because it 'must be paid from public funds in the state treasury.'" *Id.* at 962 (quoting *Edelman*, 415 U.S. at 663). As a result, the Eighth Circuit held, "[t]he alternative front pay award is [] barred by the eleventh amendment." *Id.* Both the Third and Sixth Circuits have reached

the same conclusion. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (finding "'front pay' claims to be neither prospective nor equitable" and therefore barred by the Eleventh Amendment); *Freeman v. Mich. Dept. of State*, 808 F.2d 1174, 1179 (6th Cir. 1987) (holding that front pay is barred by the Eleventh Amendment because "any payment of these claims would come from the state treasury"). Other district courts in this district and within the Fifth Circuit have reached the same conclusion. *See Antoniewicz v. Univ. of Tex. Health & Sci. Ctr. at Hous.*, Civ. A. No. H-14-2083, 2015 WL 3771007, at *11 (S.D. Tex. June 17, 2015) ("[T]he only forward-looking request is 'front pay' or damages, which are not allowed against the state under the Eleventh Amendment."); *Dube v. Tex. Health & Hum. Servs. Comm.*, Civ. A. No. SA-11-CV-354-XR, 2011 WL 3902762, at *3 (W.D. Tex. Sept. 6, 2011) (dismissing "Plaintiff's request for front pay under the ADA as barred by the Eleventh Amendment"); *Pechon v. La. Dep't of Health & Hosps.*, Civ. A. No. 09-0664, 2009 WL 2046766, at *10 (E.D. La. July 14, 2009) ("[I]t is well-settled that compensatory damages in the form of lost future wages or front-pay, are not prospective or recoverable in an official-capacity action brought pursuant to § 1983."); *Landesburg-Boyle v. Louisiana*, Civ. A. No. 03-3582, 2004 WL 1516823, at *5 (E.D. La. July 2, 2004) (dismissing plaintiff's claim for "future lost wages and benefits" against defendants in their official capacities as barred by the Eleventh Amendment); *see*

*also Malkan v. Mutua*, No. 12-CV-236-A, 2012 WL 4722688, at *8 (W.D.N.Y. Oct. 3, 2012) (holding that "front pay is unavailable as an alternative to reinstatement in an official-capacity suit against a state official where it will be paid from a state treasury"); *Huang v. Rector & Visitors of the Univ. of Va.*, No. 3:11-cv-00050, 2013 WL 865845, at *13-14 (W.D. Va. Mar. 7, 2013) (holding that "the potential alternative of front pay is barred by the Eleventh Amendment").

Recognizing this consensus, plaintiff reasserts the argument that the ADA Amendments Act places the ADA outside of Eleventh Amendment immunity.  The Court has already rejected this argument.[37] *See Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 832 (E.D. La. 2012) ("Suits brought under Title I of the ADA . . . are barred by the Eleventh Amendment.  The ADA Amendments Act of 2008 does not change this analysis.").

Plaintiff also contends that because SLU and the EEOC agreed in January 2010 that SLU would not terminate plaintiff until the EEOC concluded its investigation and rendered a determination in favor of SLU, plaintiff is entitled to wages he would have earned from the time of his termination to the conclusion of the EEOC's investigation.  Analogizing the alleged agreement between defendants and the EEOC, plaintiff cites two cases in which a state was required to pay a plaintiff's salary for the period following

---

[37]    R. Doc. 26 at 9-10.

an order of reinstatement but before actual reinstatement.  *See*
*Barnes v. Bosley*, 828 F.2d 1253 (8th Cir. 1987); *Lee v. Iowa*, 844
N.W.2d 668 (Iowa 2014).  There, the courts categorized the relief
sought--wages between the reinstatement order and actual
reinstatement--as prospective, and, thus, not barred by *Ex parte*
*Young*.  Plaintiff's reliance on these cases is unavailing because
no reinstatement order exists that could render the relief sought
by plaintiff prospective under the authorities cited.

Accordingly, plaintiff's claim for front pay is barred by the
Eleventh Amendment.

**D. Remaining Claims**

Plaintiff asserts that even if the Court grants defendants'
motion for summary judgment, he will still maintain a state-law
contract claim, a punitive damages claim against the individually-
named defendants in their individual capacities, and a claim under
section 504 of the Rehabilitation Act of 1973.

As to the contract claim, the Magistrate Judge rejected
plaintiff's assertion of a state-law contract claim as barred by
sovereign immunity.[38]  To the extent plaintiff adequately alleged
a state-law contract claim in his original complaint, the
Magistrate Judge's analysis applies with equal force and the claim

_____

[38]    R. Doc. 73 at 6 ("And lastly, the Court denies the
motion with regard to the state-law breach-of-contract claims.
These claims are barred by sovereign immunity.  With regard to
these claims, the amendment is futile.").

is barred by sovereign immunity. *See Mathai v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 959 F. Supp. 2d 951, 957 (E.D. La. 2013) (holding that state-law contract claim against state was barred by sovereign immunity).

Likewise, this Court already dismissed plaintiff's claims against the individually-named defendants in their individual capacities, and, therefore, plaintiff cannot maintain a claim for punitive damages against them.[39]

As to plaintiff's Rehabilitation Act claim, by separate order, the Court has denied plaintiff leave to amend his complaint to add a claim under section 504 of the Rehabilitation Act because the claim is time barred and therefore futile.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment.

New Orleans, Louisiana, this ___21st___ day of July, 2015.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[39]    R. Doc. 26 at 10-12 ("The Court concludes that the ADA does not permit personal liability against Johnson, Ralph and Pregeant. Accordingly, the claims against these defendants in their personal capacities must be dismissed.").